SALIN BANK AND TRUST COMPANY f/k/a Farmers and Merchants State Bank, Logansport, Ind., Appellant–Defendant,

v.

VIOLET U. PEDEN TRUST, Appellee–Plaintiff.

No. 09A05–9810–CV–495.

Court of Appeals of Indiana.

Sept. 9, 1999.

Stacey L. Katz, David A. Gunter, Beers Mallers Backs & Salin, LLP, Fort Wayne, Indiana, Attorneys for Appellant.

Donald J. Tribbett, Scott L. Starr, Andrew B. Miller, Starr Austen Tribbett & Myers, Logansport, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

Salin Bank and Trust Company ("Salin") appeals various judgments which ultimately resulted in an order directing Salin to purchase certain real estate owned by the Violet U. Peden Trust ("Peden") pursuant to an option to purchase contained in a lease agreement between Salin and Peden. Salin raises three issues for our review:

I. Whether the trial court erred by concluding a valid option contract existed.

II. Whether the trial court erred by concluding that Salin had exercised the option.

III. Whether the trial court erred by awarding Peden specific performance of the option.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Peden owns the subject real estate known as 417 East Broadway Street in Logansport ("the property"). The property was originally a stand alone building which, in 1954, Peden's predecessors in title leased to Farmers and Merchants State Bank, which is now Salin. Salin owns the two buildings adjoining the property, and during the lease period, incorporated the property into the other two buildings so that the property was no longer a stand alone structure.

In 1974, the parties' predecessors entered into a supplemental lease agreement extending the lease term to December 31, 1996 and granting Salin's predecessor an option to purchase the property within sixty days prior to December 31, 1996, for a purchase price to be determined pursuant to a valuation procedure set forth in the agreement. The option to purchase provides:

"3. As additional consideration for said payments above specified, PEDENS do hereby grant to the BANK the option to purchase the real estate described in said lease at the termination thereof and within sixty (60) days prior to December 31, 1996, for an [a]mount of money to be determined as follows:

A.) PEDENS shall select a competent appraiser to appraise the fair market value of said property.

B.) The BANK shall select a competent appraiser to appraise the fair market value of said property.

C.) The appraiser selected by PEDENS and the appraiser selected by the BANK shall select a third competent

appraiser to appraise the fair market value of said property.

D.) The appraisers shall then make exchange of appraisals, provide a copy thereof to the PEDENS and a copy to the BANK and the price at which said option may be exercised shall be the average price of the 3 appraisals.

E.) The BANK shall notify PEDENS in writing within sixty (60) days prior to December 31, 1996, of their election to exercise said option to purchase and within said 60–day period, the price shall be determined as above set forth and in the event said option is exercised, PEDENS shall furnish to the BANK at the time of closing their general warranty deed for the premises together with a merchantable abstract of title."

*Record* at 181–82.

Prior to the December 31, 1996 expiration date, the parties began an exchange of correspondence. On September 12, 1996, Robert Arnold, Violet Peden's attorney, wrote Salin to remind it of the expiration date and the option to purchase, and to ask Salin's "intentions." *Record* at 338. On September 20, 1996, William Salin, Salin's chairman of the board, responded by stating that Salin had "an interest in exercising the option." *Record* at 339. William Salin also summarized the valuation procedure set forth in the option and asked Violet Peden's attorney to provide Salin with the name and address of Peden's appraiser. On September 30, 1996, William Salin advised Violet Peden's attorney that Salin had selected John Garthwait McClain of Will Stump & Associates, as its "competent appraiser," and again asked for the name and address of Peden's appraiser so that a third appraiser could be selected. *Record* at 340. On October 8, 1996, William Salin wrote to Violet Peden as the trustee of the Peden trust, advising her that Salin "hereby exercises the option to purchase said real estate in accordance with paragraph 3 of said Supplemental Lease Agreement." *Record* at 341. William Salin further advised Violet Peden that the lease required her to select a competent appraiser, that Salin had selected John Garthwait McClain as its competent appraiser, and that she should have her appraiser contact Salin's appraiser so that a third competent appraiser could be selected. *Record* at 341. Neither Violet Peden nor her attorney responded to William Salin's September and October correspondence.

William Salin was subsequently contacted by James Larson, an attorney who represented the Peden trust. Larson stated that the Peden trust wanted to avoid the cost of an appraisal, and suggested that the parties agree on a price based upon the appraisal prepared by Salin's appraiser. On November 12, 1996, William Salin provided Larson with a copy of the appraisal prepared by John Garthwait McClain in which he valued the property at $16,000.[1] Neither William Salin nor Salin received any further correspondence from Peden, Violet Peden, or their attorneys until January 22, 1997, after the expiration date of the option.

On January 22, 1997, Arnold wrote William Salin acknowledging Salin's "decision to purchase the real estate." *Record* at 397. Arnold noted his client's "shock" at the low appraised value and stated that the McClain appraisal was "improper" and should not be used to compute the value of the property. *Record* at 397. Arnold questioned the appraisal's valuation of the "as is" market value of the original two-story building because the original building was a stand alone structure that had now been incorporated into Salin's adjacent two buildings. Arnold also questioned the impartiality of John McClain's judgment because McClain is married to William Salin's daughter, a fact not disclosed on the appraisal report.[2] Arnold stated that

---

1. Salin's attorney represented at oral argument that the McClain appraisal was adjusted upward in the trial court. The trial court's findings state that McClain appraised the building for $36,000. *Record* at 695 (Finding No. 15). There is nothing in the Record to suggest that a similar adjustment was made or understood by the parties at the time Salin provided Peden with a copy of the McClain appraisal.

2. Materials submitted in connection with the parties' summary judgment motions reveal that William Salin's daughter is an employee, shareholder, officer and director of Salin.

unless William Salin agreed to withdraw McClain's appraisal and to reach an agreement regarding an appropriate valuation method, then he would seek declaratory relief. On February 7, 1997, William Salin responded to Arnold, claiming that McClain's appraisal was proper and expressing Salin's willingness to accept Peden's belated "compliance" with the supplemental lease agreement by appointing its own competent appraiser. *Record* at 400.

On March 21, 1997, Peden filed a complaint for declaratory judgment in which it sought a determination of whether a valid option contract existed and whether Salin had exercised that option. Salin filed a counterclaim for declaratory judgment, asking the court to determine that the option was not exercised in accordance with its terms prior to the December 31, 1996 expiration date, or alternatively, that no valid option existed, or alternatively, that if the option was exercised, Peden breached the terms of the option by failing to appoint a competent appraiser.

The parties filed cross motions for summary judgment. The trial court granted Peden's motion and denied Salin's motion, finding that a valid option contract existed and that Salin had exercised its option. The trial court also ordered the parties to proceed with valuing the property pursuant to the method provided in the option within sixty days. The trial court's order directed that if the parties were unable to arrive at an agreed upon price, then the court would determine the property's fair market value. The parties were unable to reach an agreed upon price, and the matter proceeded to a bench trial. The trial court entered findings and conclusions in which it determined the fair market value of the property was $85,000 and that Peden was entitled to specific performance of the option. Salin appeals.

## DISCUSSION AND DECISION

Salin is not challenging the trial court's findings or judgment with respect to the fair market value of the property. Rather, Salin challenges the trial court's summary judgment in favor of Peden on the issues of the validity of the option contract and whether Salin properly exercised the option. In addition, Salin challenges the trial court's decision to order specific performance of the option.

As for the summary judgments, we review them using the same standard as the trial court. *Wickey v. Sparks*, 642 N.E.2d 262, 265 (Ind.Ct.App.1994), *trans. denied* (1995). Summary judgment shall be granted if the designated evidentiary matter demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Auler v. Van Natta*, 686 N.E.2d 172 (Ind.Ct.App.1997), *trans. denied*. In determining whether summary judgment is appropriate, all facts and reasonable inferences must be construed against the moving party. *Hapner v. State*, 699 N.E.2d 1200, 1203 (Ind.Ct.App.1998).

## I. Existence of Valid Option Contract

Salin contends that no valid option contract existed because Peden defeated the option when it failed to comply with its obligation to appoint an appraiser to assist in arriving at a purchase price prior to the expiration of the option. "An option to purchase real estate is a contract by which the owner of realty agrees with another person that the latter shall have the power to purchase such property at a fixed price within a certain period of time." *Romain v. A. Howard Wholesale Co.*, 506 N.E.2d 1124, 1127 (Ind.Ct.App.1987), *trans. denied*. The price contained in the option contract involved here is not fixed but is determined by employing the method contained in the provisions of the option. This court has approved of such an arrangement. *See Fetz v. Phillips*, 591 N.E.2d 644 (Ind.Ct.App.1992). In *Fetz*, this court upheld the trial court's summary judgment in which it determined that a five-year lease of real estate contained an option to purchase rather than a right of first refusal. The terms of the option contained a presumptive value for the property but allowed the parties to negotiate the actual purchase price at the time the option was exercised. This court held that the terms for determining the purchase price were unambiguous and that, accordingly, the trial court properly granted summary judgment inasmuch as the court determined the contract

created an option to purchase. *Id.* at 647. This court went on to hold that the tenant's failure to comply with two terms of the lease did not cancel the option because the landlord failed to provide the required written notice of the noncompliance. *Id.* at 648.

And so it is here. The provisions setting forth the manner in which the purchase price is to be determined are unambiguous. Thus, the trial court properly granted summary judgment in favor of Peden inasmuch as it determined a valid option contract existed between the parties. Furthermore, Peden's failure to obtain a competent appraiser did not cancel the option because, as we discuss below, Peden did not have a duty to obtain an appraiser because the appraiser Salin selected lacked the contractually required competence.

## II. Exercise of Option

■ Salin next contends that the option was not exercised in accordance with its terms prior to the December 31, 1996 expiration date because Peden failed to select a competent appraiser. Without Peden's appraiser, Salin continues, a purchase price could not be determined and the option could not be exercised because the determination of such purchase price was an essential precondition to the exercise of the option. Failure to exercise the option within the sixty-day time period, Salin concludes, meant that the option expired on December 31, 1996.

> "To exercise an option to purchase, the decision to purchase must be made by the optionee under the terms of the option and the decision must be communicated within the life of the option. Since the optionee is the party exercising the option, courts require strict adherence to the option's terms."

*Lafayette Expo Center, Inc. v. Owens,* 531 N.E.2d 508, 510 (Ind.Ct.App.1988). To exercise the option, Salin was required to provide Peden with written notice of its election to exercise the option within sixty days prior to December 31, 1996. Salin provided the required written notice when William Salin

wrote to Violet Peden, stating that Salin "hereby exercises the option to purchase said real estate in accordance with paragraph 3 of said Supplemental Lease Agreement." *Record* at 341.

■ We reject Salin's argument that determination of the purchase price was a prerequisite to exercising the option. The terms of the provision use the conjunction "and" to separate the method in which the option is to be exercised from the method in which the purchase price is to be determined. Thus, two separate and distinct things were to occur within sixty days prior to December 31, 1996: Salin was to provide Peden with written notice of its exercise of the option *and* the purchase price was to be determined according to the stated procedure. Exercise of the option was not dependent upon determination of the purchase price. Thus, Peden's failure to appoint a competent appraiser within the stated time period did not defeat Salin's exercise of the option.[3]

## III. Specific Performance

Finally, Salin contends that Peden is not entitled to specific performance of the option because Peden failed to perform its obligations thereunder. Salin further argues that even if specific performance is a permissible remedy, Peden should be bound by the valuation Salin obtained during the option time period.

■ Specific performance is an equitable remedy which the trial court may grant in its discretion. *Stoll v. Grimm,* 681 N.E.2d 749, 756 (Ind.Ct.App.1997); *Neel v. Cass County Fair Ass'n,* 143 Ind.App. 339, 344, 240 N.E.2d 546, 550 (1968). The grant of specific performance directs the "performance of a contract according to the precise terms agreed upon, or substantially in accordance therewith." *Strauss v. Yeager,* 48 Ind. App. 448, 460, 93 N.E. 877, 882 (1911). A party seeking specific performance of a real estate contract must prove that he has substantially performed his contractual obligations or offered to do so. *Claise v. Ber-*

3. Salin provided Peden with written notice of its election to exercise the option on October 8, 1996, which is more than sixty days prior to December 31, 1996. Neither party addresses

how, if at all, this deviation from the specified time period affected the validity of Salin's exercise of the option, and we do not address the issue.

*nardi,* 413 N.E.2d 609, 612 (Ind.Ct.App. 1980). A trial court's decision to grant specific performance is reviewed for an abuse of discretion and, when conducting such review, we do not reweigh the evidence. *Id.*

■ Salin's first contention, that specific performance was not an available remedy because Peden did not perform its obligations under the contract, requires that we determine the nature of any contractual obligation Peden had. The language of the contract imposed a simultaneous duty on each party to obtain a competent appraiser to value the property. Salin embarked on its duty first and selected McClain as its appraiser. McClain, however, was not a competent appraiser.

We reach this conclusion based upon the Uniform Standards of Professional Appraisal Practice (USPAP) which Indiana has adopted to regulate the practice of appraisers licensed in our state. *See* 876 IAC 3–6–2. The preamble to the USPAP acknowledges its Ethics Provisions and describes them as "setting forth the requirements for integrity, objectivity, independent judgment, and ethical conduct." USPAP, Preamble at 1. The Ethics Provisions themselves contain a conduct provision that states:

> "An appraiser must perform ethically and competently in accordance with these standards and not engage in conduct that is unlawful, unethical, or improper. An appraiser who could reasonably be perceived to act as a disinterested third party in rendering an unbiased appraisal, review, or consulting service must perform assignments with impartiality, objectivity, and independence and without accommodation of personal interests."

USPAP, Preamble at 2. While we express no opinion on whether McClain acted ethically, we can say without reservation that he did not act competently. By virtue of his undis-

closed personal connection with Salin, he rendered an appraisal that was not impartial, objective, or independent, and which accommodated his personal interests. McClain's spouse was an employee, officer, shareholder, and director of Salin who stood to profit if Salin were to buy the property at a deflated price.[4] McClain's personal interest could only benefit by his spouse's profits. McClain, therefore, was not a competent appraiser insofar as the property was concerned.

■ Salin's retention of an incompetent appraiser to value the property constituted defective performance of its duty under the contract. Such defective performance relieved Peden of performing its duty to obtain a competent appraiser under the terms of the contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 237 cmt. a (1981). Without a duty to perform, Peden cannot be found in breach of the contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 235 cmt. b (1981). This is true regardless of the fact that Peden did not challenge the McClain appraisal until after the option period expired. Peden did not know the appraisal was defective until after it investigated McClain which took longer than the six weeks remaining in the option period once it received a copy of the McClain appraisal. *Record* at 450 (Affidavit of Violet Peden). A party's material failure of performance, including defective performance, will act as the non-occurrence of a condition of the other party's remaining duties, even if such other party is unaware of the failure. RESTATEMENT (SECOND) OF CONTRACTS §§ 235 cmt. a, 237 cmt. c. Thus, Salin's defective performance relieved Peden of its duty to perform so that its failure to retain a competent appraiser within the option period does not prevent it from pursuing specific performance. The trial court was within its discretion to order Salin to purchase the property.[5]

4. The present case is distinguishable from *Broadhead v. Bonita Lakes Mall,* 702 So.2d 92 (Miss. 1997) in which the court held that an appraiser who had a leasehold interest in adjacent property was still a competent appraiser. The court reached its conclusion on the basis that the appraiser's property interest was limited to rental receipts in a fixed, predetermined amount, unaffected by the value of surrounding property, and

that the appraiser disclosed his interest. Neither of these facts is present here.

5. We acknowledge that the fair market value was ultimately determined by the trial court rather than pursuant to the appraisal procedure set forth in the contract. Salin does not challenge either the trial court's authority to value the

We also reject Salin's second contention, that Peden should be bound by the value set for the property in the McClain appraisal because that was the only valuation obtained during the option period. McClain was not a competent appraiser within the meaning of the contract and, therefore, his valuation of the property is not binding on Peden.

Affirmed.

GARRARD, J., and NAJAM, J., concur.

property or the value the court ultimately select-

ed, and we do not address the issues.