IMPERIAL HOUSE OF INDIANA, INC. *v.* EAGLE SAVINGS ASSOCIATION *v.* SANBORN ELECTRIC CO., INC. AND C & S LATHING AND PLASTERING CO., INC.

[No. 1-777A154. Filed June 6, 1978. Rehearing denied August 15, 1978. Transfer denied November 6, 1978.

*James M. Secrest, Denise Page, Hilgedag, Johnson, Secrest & Murphy* of Indianapolis for appellant.

*David Rogers, Thomas M. McDonald, Rogers, McDonald & Grodner,* of Bloomington, for appellees.

## STATEMENT OF THE CASE

LOWDERMILK, J. — Cross-complainant-appellant Eagle Savings Association (Eagle) appeals from the judgment of the Monroe Circuit Court in favor of intervening defendants-appellees Sanborn Electric Co., Inc. (Sanborn) and C & S Lathing and Plastering Co., Inc. (C & S), wherein Sanborn and C & S were awarded judgment on the foreclosure of mechanic's liens against real estate upon which Eagle sought to foreclose a mortgage.

## FACTS

The trial court summarized the facts, which were stipulated by the parties as follows:

"And the Court having examined the pleadings and requests for admissions hereinbefore filed as well as hearing the evidence of the parties and the arguments of counsel, now finds:

1. That in March of 1966, McIntyre entered into a contract with Bloomington Motor Inn, Inc. for the construction of a motel, restaurant and other facilities on real estate, the legal description of which is attached to Exhibit "A" hereinafter mentioned. Said real estate was then owned by Federal Real Estate Trust, the grantor mentioned in paragraph 9 hereof, and continued to be so owned until April 5, 1967.

2. That in December of 1966 C & S entered into a contract with McIntyre to provide materials and perform labor on said property and commenced to provide materials and perform labor on or about said date and continued to do so from time to time thereafter.

3. That C & S has not bee paid in full for such labor and materials, but now claims the sum of $12,000.00 plus interest to be still due and owing for such labor and materials.

4. That in December of 1966, Sanborn entered into a contract with McIntyre to provide materials and perform labor on such improvements to said property and commenced to provide materials and provide labor on or about said date, and continued to do so from time to time thereafter.

5. That Sanborn has not been paid in full for such labor and materials, but now claims the sum of $20,373.95 plus 8% interest to be still due and owing for such labor and materials.

6. That on March 2, 1967, the defendant Sanborn, executed an instrument entitled 'Affidavit', a copy of which is attached hereto and marked Exhibit 'B', and that the sum of $1,490.76 referred to in said instrument was paid to the defendant Sanborn by or for Hoosier Inn, Inc. (hereinafter referred to as 'Hoosier') on April 20, 1967.

7. That on April 5, 1967, intervenor McIntyre and Hoosier entered into [a no lien contract]. . . .

8. That said agreement was duly recorded at 3:35 P.M. on April 5, 1967, in Book 063 at page 28, in the office of the Monroe County Recorder.

9. That a warranty deed, transferring title to the real estate which is the subject of this litigation from Federal Real Estate Trust to Hoosier, was recorded at 3:25 P.M. on April 5, 1967, in Deed Record A-176, at page 372, in the office of the Monroe County Recorder.

10. That a warranty deed, transferring title to the real estate which is the subject of this litigation from Hoosier to Rudjak Realty Co., Inc. (hereinafter referred to as 'Rudjak') was recorded at 8:00 A.M. June 13, 1968, in Deed Record 184, at pages 252-254 in the office of the Monroe County Recorder.

11. That a warranty deed, transferring title to the real estate which is the subject of this litigation from Rudjak to Avionics Corporation of America (hereinafter referred to as 'Avionics'), was recorded March 27, 1969, in Deed Recorded 189, at pages 98-100, in the office of the Monroe County Recorder.

12. That a warranty deed, transferring title to the real estate which is the subject of this litigation from Avionics to Hospitality Management Serivce, Inc., was recorded on July 23, 1970, in Deed Record 197, at pages 227-230 in the office of the Monroe County Recorder.

13. That notice of intention by C & S to hold a mechnic's lien, Instrument No. 06922, was recorded at 3:40 P.M. on October 24, 1967, in Mechanic's Lien Book 20, at page 248, in the office of the Monroe County Recorder.

14. That notice of intention by Sanborn to hold a mechnic's lien was recorded at 2:06 P.M. on January 5, 1968, in Mechnic's Lien Book 20 at page 299, in the office of the Monroe County Recorder.

15. That notice of intention by McIntrye to hold mechanic's lien was recorded on December 28, 1967, in Mechanic's Lien Book 20, at pages 291-294, in the office of the Monroe County Recorder.

16. That a mortgage in the amount of $800,000.00 from defendant Hospitality Management Services, Inc., to Eagle was duly recorded at 10:40 A.M. on July 23, 1970, in Mortgage Record A-192, pages 157-164 in the office of the Recorder of Monroe County." (Our insert)

On April 13, 1973 Imperial House of Indiana, Inc. filed a complaint for foreclosure of a mortgage on the real estate. On April 17, 1973 Eagle filed its answer and cross-complaint to foreclose its mortgage. On July 27, 1973 the court entered partial summary judgment foreclosing Eagle's mortgage.

On August 2, 1973 McIntyre filed a petition to be joined as parties defendant. McIntrye, C & S, and Sanborn all filed answers asserting the priority of their liens to the interests of all other defendants including Eagle's mortgage.

In its entry of August 21, 1974 the trial court held that the no lien contract, signed by McIntyre on April 5, 1967, waived the rights of all subcontractors in the project even though such subcontractors had already commenced working on the project. Therefore, the court held that the notices of intention to hold mechanic's liens recorded by McIntyre, C & S, and Sanborn were ineffective and invalid.

On October 21, 1974 C & S and Sanborn filed their motion to correct errors. On February 14, 1977 the court made the following entry:

"The Court being duly advised in the premises now sustains the motion to correct errors heretofore filed by the defendants' C & S Lathing and Plastering Company, Inc., and Sanborn Electric Company. The Court amends its findings in this cause to be consistent with the following facts:

1. The Mechanic's and Materialman's Lien held by C&S Lathing and Plastering Company, Inc., is a valid lien against the following described real estate as set forth in plaintiff's complaint. Said lien has priority over all other interests of the parties in this suit in the said real estate.

2. The Mechanic's and Materialman's Lien held by Sanborn Elec-

tric Company is a valid lien against the following described real estate as set forth in plaintiff's complaint. Said lien has priority over all other interests of the parties in this suit in said real estate.

JUDGMENT        Nat U. Hill, Judge"

Eagle filed its motion to correct errors on April 14, 1977, and such was overruled by the court. Eagle now brings this appeal.

## ISSUE

The issue which has been presented to this court for review is as follows:

1. Whether the recording of a no-lien contract, executed by the contractor and new owner, can cut off the rights of subcontractors, who had commenced working on the project four months prior to the signing and recording of the no-lien contract, to assert mechanic's liens against the property for work, services, or materials provided, where those subcontractors were not actually a part of the no-lien agreement.

## DISCUSSION AND DECISION

Eagle contends that the trial court erred in granting the motion to correct errors of C & S and Sanborn and in holding that the mechanic's liens of C & S and Sanborn were valid even though the contractor and the new owner had entered into a no-lien contract.

IC 1971, 32-8-3-1 (Burns Supp. 1977) provides in part:

"No provision or stipulation in the contract of the owner and principal contractor that no lien shall attach to the real estate, building, structure or any other improvement of the owner shall be valid against subcontractors, mechanics, journeymen, laborers or persons performing labor upon or furnishing materials or machinery for such property or improvement of the owner, unless the contract containing such provision or stipulation shall be in writing, and shall contain specific reference by legal description of the real estate to be improved and shall be acknowledged as provided in case of deeds and filed and recorded in the recorder's office of the county in which such real estate, building, structure or other improvement is situated not more than five [5] days after the date of execution of such contract. The contract herein provided for shall be without effect upon labor, material or machinery supplied prior to the time of the filing with the recorder of said contract. . . ."

Eagle contends that because the no-lien contract was in writing, contained a legal description of the real estate to be improved, and was properly recorded within five days of the signing of the contract the rights of all subcontractors who furnished labor, materials, or machinery would be cut off regardless of the fact that some of the subcontractors had been working on the project for more than four months when the no-lien contract was signed.

Eagle points out that IC 32-8-3-1, *supra*, clearly allows a subcontractor or materialman to have a mechanic's lien on labor, materials, and machinery supplied prior to the signing and recording of the no-lien contract, but it is Eagle's contention that, as a natural corollary, the statute also implies that any labor, materials, or machinery supplied after the signing and recording or the no-lien contract could not be secured by a mechanic's lien. We do not agree.

To allow an owner and a contractor, without the consent of subcontractors and materialmen who have already committed themselves to deliver services and materials, to agree to a no-lien contract after work had already commenced on a project, would be to defeat the protective purposes of the mechanic's lien statutes. Such a procedure would create four difficulties which were pointed out by C & S and Sanborn on pages 14 and 15 of their appellees' brief as follows:

"(1)   It would permit the owner and general contractor to induce sub-contractors to agree to perform work by executing a contract permitting liens, but later destroy the sub-contractor's lien by executing a new contract with a no-lien provision.

(2)   It would require the sub-contractor to make daily or hourly checks with the county recorder to ascertain whether a no-lien contract had been recorded, thus terminating his security lien.

(3)   Given (1) and (2) above, it would leave the sub-contractor continually uncertain about the availability of the security of the lien given him by the legislature.

(4)   It changes the consideration for the inducement to perform labor and supply materials; it changes the rules in the middle of the game."

Without a doubt IC 32-8-3-1, *supra*, allows a contractor and an owner

to enter into a no-lien contract prior to the commencement of work on a project. The recording of such a contract gives any prospective subcontractor or materialman sufficient notice of the no-lien provisions of the principal contract prior to the time when such subcontractor or materialman must commit his time, effort, money, and materials. Where the subcontractor, who agreed to do a job while under the impression that he could obtain a mechanic's lien if necessary, has already commenced work on a project, a subsequently recorded no-lien agreement is insufficient to cut off that subcontractor's rights to obtain a mechanic's lien. The general rule in such circumstances is set forth in Annotation, 75 ALR3d 505 at 588-589, as follows:

"A contractor's release or waiver of liens executed subsequently to entering into the principal contract does not have the same force as an original stipulation to that effect. A contractor's waiver or release of his lien after a subcontractor has commenced performance of his contract does not deprive the subcontractor of his lien, even though the mechnic's lien statute gives the subcontractor 'the same lien' as the contractor.

Whils subcontractors and materialmen are bound to take notice of the original contract, those who have in good faith furnished labor and material upon the the faith of the original contract will not be affected by any subsequent agreement of the contractor to which they have not assented, or by any act of waiver of the original contractor. A materialman who furnished lumber for a building is not prevent from filing a lien therefor by the fact that the contractor, subsequently to his contract, but before the materialman furnished the lumber, released his right to file a lien, even though he made no inquiry as to the terms of the original contract.

When a subcontractor is employed by a general contractor, he knows or must be presumed to know the terms of the principal contract then in existence, and in the absence of any notice that its terms are changed, he has a right to presume that it remains unaltered. It is not his duty to inquire, during the progress of his work, whether a supplemental agreement has made or not. Consequently, he cannot be affected by the contractor's agreement in a supplementary contract made after the subcontractor's work was nearly completed, in which he undertook to deliver the building free of all liens, where the subcontractor did not appear to have any notice of the provisions of such supplementary contract. A subcontractor's rights for labor and material furnished

under an original contract between the owners and the contractor may not be prejudiced by a secret agreement, subsequently entered into between them, of which the claimant had no notice." (Footnotes omitted)

In *Ramsey v. Peoples Trust and Savings Bank* (1970), 148 Ind.App. 167, 264 N.E.2d 111 this court held that where a subcontractor, who was asserting a mechanic's lien, had moved certain machinery to the construction site but had not commenced working prior to the signing and recording a no-lien contract between the owner and the general contractor, the subcontractor's failure to begin working prior to the signing and recording of the no-lien contract precluded his right to claim that he was outside the no-lien contract. The natural inference from the holding in *Ramsey, supra*, is that if the subcontractor had commenced working prior to the signing and posting of the no-lien contract then all of the labor and materials supplied by that subcontractor during the course of the construction project would have been outside of the terms of the no-lien contract. Therefore, a mechanic's lien for labor and materials could have been properly asserted by that subcontractor.

In the case at bar both C & S and Sanborn had commenced working on the construction project four months before the signing and recording of the no-lien contract by the general contractor and the new owner. Both brought themselves within the provisions of the mechanic's lien statutes by filing, within 60 days of their last work on the project, their intentions to hold mechanic's liens. The trial court did not err in declaring that those liens are valid and have priority over all other interests in the real estate.

Judgment affirmed.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 376 N.E.2d 537.