**MAYBERRY CAFÉ, INC.,**
Appellant–Defendant,

v.

**GLENMARK CONSTRUCTION CO., INC., Edwards–Rigdon Construction Co., Irwin Union Bank and Trust Co., Dan Haines Construction, Inc., and Robert E. Curry & Associates, Inc.,** Appellees–Plaintiffs/Crossclaim-ant/Cross–Defendant/Third–Party Defendants.

No. 32A05–0607–CV–396.

Court of Appeals of Indiana.

Jan. 31, 2008.

Rehearing Denied April 4, 2008.

---

Grantland M. Clapacs, Karl L. Mulvaney, Indianapolis, IN, Attorneys for Appellant.

Michael A. Kiefer, Fred Pfenninger, James Dimos, Julia Blackwell Gelinas, Lucy R. Dollens, Indianapolis, Gregory E. Steuerwald, Danville, Joan Tupin Crites, Columbus, IN, Attorneys for Appellees.

## OPINION

BARTEAU, Senior Judge.

### STATEMENT OF THE CASE

Mayberry Café, Inc. ("Mayberry") appeals from the trial court's judgment in favor of Glenmark Construction Company ("Glenmark"), Edwards–Rigdon Construction Company ("E–R"), Irwin Union Bank and Trust Company ("Irwin Union"), Dan Haines Construction, Inc. ("Haines"), and Robert E. Curry & Associates, Inc. ("Curry").[1] We reverse and remand in part and affirm in part.

---

1. Mayberry is also designated as "Defendant/Cross–Defendant/Crossclaimant/Third– Party Plaintiff Below" and the Appellees are

## ISSUES

The parties raise numerous issues, which we restate as:

I. Whether an indemnity and hold harmless provision in a no-lien agreement between an owner and a general contractor is properly enforceable between the parties to the no-lien contract, regardless of when it was recorded.

II. Whether the trial court's award of damages to Mayberry is clearly erroneous.

III. Whether the trial court's calculation of damages is adequate.

IV. Whether the trial court erred in awarding attorney fees to Glenmark.

V. Whether the trial court erred in awarding damages to Haines.

VI. Whether the trial court erred in determining that Curry is not liable for damages.

## FACTS AND PROCEDURAL HISTORY

In 1998, Christine and Bradley Born, who owned and operated the Mayberry Café in Danville, Indiana, decided to renovate and expand the 100–year–old building that housed the café. Mayberry hired Rick Battershell, a Curry employee, to act as architect on the project for $11,800.00. Battershell drew plans and specifications for the project, finalizing the plans and specifications on March 10, 1999. The plans and specifications called for the elevation of the finished floor in the new addition to match the elevation of the floor of the existing structure. The plans did not direct as to the means, methods, or sequence of construction on the project.

Mayberry hired E–R as the general contractor for the project, and on April 12, 1999, the parties signed a contract for a total project cost of $326,240.00. The contract provided that E–R "supervise and direct the [project]" and be "solely responsible for and have control over construction means, methods, techniques, sequences and procedures for coordination of all portions of the [project] under the Contract...." (Appellant's App. at 147).

E–R commenced work on the project on April 16, 1999, obtained bids from several contractors, and executed ten contracts with subcontractors on April 19, 1999. Mayberry authorized the beginning of construction even though it had not purchased the adjacent real estate or secured financing for the project.

Mayberry obtained financing for the project from Irwin Union in the amount of $340,000.00. The loan, which was closed on May 18, 1999, required that Mayberry and E–R execute a "No–Lien Agreement." Irwin Union did not have the "No–Lien Agreement" recorded with the Hendricks County Recorder until May 27, 1999, nine days after its execution. Also included in the contract was an indemnity and hold harmless provision that required E–R to indemnify Mayberry for any expenses incurred in obtaining the release of mechanic's liens.

During construction, Mayberry requested and approved changes in the scope of the work, including additional layers of drywall and a designer ceiling. The plans and specifications provided for the new floor in the addition and the existing floor in the café to be made even because the elevation appeared to deviate by approximately ¾". The plans called for the new addition to be built on the outside of the café's western wall. In order to minimize the amount of time the café was closed, the new addition and floor were installed before the exterior wall of the café was removed. After the new floor was installed

designated as "Plaintiffs/Crossclaimant/Cross–    Defendant/Third–Party Defendants Below."

and the existing wall was removed, an elevation deviation of 3" was discovered in certain sections of the floor. Mayberry and E–R mutually agreed to a particular "fix" involving the installation of feathered ramps, a solution that ultimately failed.

Mayberry paid $105,370.00 to E–R, but after disputes arose between the two, Mayberry refused to make any more payments. Payments were not made to subcontractors, including Glenmark and Haines, and the subcontractors began filing mechanic's liens against Mayberry's real estate. Mayberry then made direct payment to certain subcontractors in the amount of $175,532.95.

The lawsuit on appeal is a consolidated action of several lawsuits that were filed by the various parties involved in the project. On December 20, 1999, Glenmark filed an action in the Hendricks Circuit Court seeking to foreclose its mechanic's lien against Mayberry's real estate, and stating a claim for breach of contract against E–R. Glenmark also named Irwin Union, as the mortgage holder on Mayberry's real estate, as a defendant in its lawsuit.

Haines filed a separate action in the Hendricks Circuit Court against Mayberry and E–R. Haines sought to recover against Mayberry under Indiana's Personal Liability Statute and asserted a breach of contract claim against E–R.

Once the aforementioned lawsuits were consolidated, E–R filed a cross-claim against Mayberry, asserting a breach of contract claim and also claims for unjust enrichment and for indemnity against the claims being made by E–R's subcontractors.

Mayberry then filed a cross-claim against E–R, asserting claims for breach of contract and for negligence. As part of its cross-claim, Mayberry made a claim for indemnity against E–R, stating that E–R was responsible to indemnify and hold Mayberry harmless against any claims for payment being made by the subcontractors. Mayberry was subsequently granted permission to bring claims against Curry for negligence and breach of contract.

Mayberry then filed a motion to deposit funds with the trial court, pursuant to Trial Rule 67(A). The trial court granted the motion, and Mayberry deposited $20,894.75 with the court.

On May 9, 2003, Mayberry filed a motion for leave to assert an omitted cross-claim against Irwin Union, which the trial court denied. Mayberry appealed the trial court's ruling, and this court held that the trial court's order was not a final order, therefore dismissing the appeal without prejudice.

A bench trial was held in the Hendricks Superior Court on all pending claims between Mayberry, E–R, Glenmark, Haines, Curry, and Irwin Union. The trial court entered findings of fact and conclusions of law in support of the following judgments:

1. Glenmark was awarded judgment against Mayberry and E–R in the amount of $37,875.68;

2. Irwin Union was determined to have a priority lien against Mayberry's real estate subject only to Glenmark's judgment;

3. E–R was awarded judgment against Mayberry in the amount of $76,326.99;

4. Haines was awarded judgment against Mayberry and E–R in the amount of $14,615.74;

5. Mayberry was awarded judgment against E–R in the amount of $6,000.00; and

6. Curry was awarded judgment on Mayberry's claims.

After a hearing to address multiple motions to correct error, the trial court further ruled:

1. Glenmark was entitled to recover attorney fees in the amount of $31,704.22 on its claim to foreclose its mechanic's lien;

2. Glenmark was entitled to recover prejudgment interest on its claim;

3. Haines' claim for prejudgment interest was denied because interest was included in the original judgment; and

4. Mayberry's motion to correct error was denied in all respects.

This appeal ensued.

### DISCUSSION AND DECISION

### I. NO–LIEN/INDEMNIFICATION AGREEMENT

As noted in the recitation of facts above, Mayberry and E–R executed a "No–Lien Agreement." The agreement provides in pertinent part that "no lien or notice of lien shall in any event or circumstance whatever, attach to, or be claimed or filed against [Mayberry's building]." (Exhibit 302, p. 2). The agreement further provides that E–R "shall indemnify, save and hold harmless [Mayberry] from any expenses incurred in obtaining the release of any such lien, including attorney fees." *Id.*

The trial court held that the no-lien portion of the agreement was unenforceable and that E–R was not required to indemnify Mayberry. The validity of a no-lien agreement is a question of law reviewed *de novo* on appeal. *See Brant Construction Co. v. Lumen Construction Co.*, 515 N.E.2d 868, 872 (Ind.Ct.App. 1987), *trans. denied.*

■ Mayberry argues that although the no-lien/indemnification agreement was not enforceable as it pertained to the subcontractors, it is an enforceable agreement between the parties to the contract. Accordingly, Mayberry contends that the trial court erred in failing to hold E–R liable to Mayberry under the express terms of the indemnity provision of the No–Lien Agreement. Mayberry further contends that E–R should be held liable to Mayberry for the amount of all mechanic's liens, including Glenmark's lien, plus Mayberry's attorney fees to be determined by the trial court.

E–R contends that under Ind.Code § 32–8–3–1, now Ind.Code § 32–28–3–1, a no-lien agreement is unenforceable if it is not timely recorded within five days of its execution. E–R also contends that the agreement is unenforceable because it was entered into approximately thirty-two days after E–R and the subcontractors commenced construction. E–R argues that the indemnity provision is not severable from the no-lien provision and that "[b]ecause the No–Lien Agreement is invalid as to subcontractor liens, the indemnification clause related to the subcontractor's liens is likewise invalid." Appellee's Brief at 7.

Ind.Code § 32–8–3–1(c)(B)[2] provides that:

No provision or stipulation in the contract of the owner and principal contractor that no lien shall attach to the real estate, building, structure or any other improvement of the owner shall be valid against subcontractors, mechanics, journeymen, laborers or persons performing labor upon or furnishing materials or machinery for such property or improvements of the owner, unless the contract containing such provision or stipulation shall be in writing, and shall contain specific references, by legal description of the real estate to be improved and shall be acknowledged as provided in the case of deeds and filed and recorded in

---

**2.** The current version of the Mechanic's Lien Statute, Ind.Code § 32–28–3–1 et seq., allows

for no-lien contracts only on residential construction projects.

the recorder's office of the county in which such real estate, building, structure or other improvement is situated not more than five (5) days after the date of execution of such contract.

■ It is clear that the aforementioned statute is intended to protect third parties who may not have notice of a no-lien provision in the contract between an owner and a principal contractor. *See Bank of New York v. Nally*, 820 N.E.2d 644, 649 (Ind. 2005) (holding that the purpose of recording the no-lien agreement is to put third parties on notice of the provision and the prospective waiver of their lien rights). The statute and its five-day notice provision are not directed toward the contractor who entered into the contract, as the contractor would have notice as a party to the provision. Thus, Irwin Union's failure to timely record the no-lien agreement in the present case has no effect on the agreement between the parties thereto, Mayberry and E–R.

The import of Ind.Code § 32–28–3–1(c)(B) is illustrated by our holding in *Greenfield Builders & Erectors, Inc. v. Fellure*, 443 N.E.2d 87 (Ind.Ct.App.1982). In *Greenfield*, where a contractor was arguing that the statute rendered a no-lien agreement unenforceable against the contractor himself, we held that a no-lien agreement remains effective between an owner and a general contractor even if it is not recorded. *Id.* at 91.

Here, the failure to record the no-lien agreement has no bearing on the respective contractual obligations of the parties to the agreement itself, as they were clearly aware of their obligations. As between Mayberry and E–R, the no-lien/indemnity agreement is enforceable by its plain terms, the same as any other contract.

Furthermore, there is no limitation on the application of the no-lien/indemnity agreement based upon the date the work on the project commenced. We have held that Ind.Code § 32–28–3–1 protects only third parties against the risk of beginning a construction project, only to later have their lien rights waived without any prior notice. *See Imperial House of Indiana, Inc. v. Eagle Savings Association*, 176 Ind. App. 572, 376 N.E.2d 537, 540–41 (1978).

■ In addition, the date that work commenced would not invalidate the indemnity provisions of the no-lien agreement. E–R is bound by the no-lien/indemnity agreement that it signed, and we reverse and remand to the trial court with directions that the court set aside its judgment and enter judgment consistent with our opinion.[3]

## II. MAYBERRY'S DAMAGE AWARD

■ E–R contends that the trial court's findings do not support the setoff of $6,000.00 to Mayberry for the uneven floor. E–R argues that the setoff is improper because the damages for the uneven floor are not recoverable as the elevation discrepancies in the existing floor were unknown and not within the parties' contemplation when the contract was executed. E–R points to the trial court's findings that the floor's condition was unforeseeable and that the parties mutually agreed to the solution of the feather ramp. In support of its argument, E–R cites *Rogier v. American Testing and Engineering Corp.*, 734 N.E.2d 606, 614 (Ind.Ct.App. 2000), *trans. denied* (citing *Indiana & Michigan Electric Co. v. Terre Haute Industries Inc.*, 507 N.E.2d 588 (Ind.Ct.App. 1987), *trans. denied*), for the proposition

---

**3.** In its brief, Mayberry raised the issue of whether the trial court erred in denying Mayberry's proposed cross-claim against Irwin Union. This proposed cross-claim sought damages caused by Irwin Union's failure to record the No–Lien Agreement in a timely manner. Our resolution of Issue I renders this issue moot.

that a party to a contract does not have to pay damages that are not foreseeable.

In *Rogier*, we held that the measure of damages for breach of contract includes "such damages as may fairly and reasonably be considered as arising naturally, i.e., according to the usual course of things from the breach of contract itself...." 734 N.E.2d at 644. Here, the trial court determined that the cost of repairs is a reasonably foreseeable consequence of a breach based upon defective work. It is apparent that this is so, and we cannot agree with E–R's contention that the cost of repairs occasioned by defective installation of a floor required under the contract is somehow unforeseeable.

Furthermore, while the trial court determined and found that E–R was prevented from boring holes to ascertain the level of the existing floor, the trial court also apparently believed the testimony of Battershell and a builder that there were other ways to make sure that the elevations of the floors were even. Thus, the trial court did not determine that the floor's condition was unforeseeable. We cannot say that the trial court was clearly erroneous in making its findings.

■ Additionally, it does not appear that the trial court agreed with E–R's contention that Mayberry and E–R mutually modified the contract when Mayberry agreed to let E–R try the feathered ramps. As the trial court found, "Mayberry was put in a no-win situation once the concrete was poured incorrectly." (Mayberry Finding of Fact # 8; Appellant's App. at 51). The trial court did not commit clear error in determining that Mayberry did not intend to modify the original contract when it agreed to allow the installation of feathered ramps.

## III. AMOUNT OF DAMAGES TO MAYBERRY

■ Mayberry contends that the trial court erred in awarding only $6,000.00 as the setoff for damages resulting from E–R's failure to install a floor in the addition that was even with the floor in the existing café. Mayberry argues that the $6,000.00 award is clearly inadequate because it ignored uncontradicted testimony by Mayberry's expert that evening the floors, by installing a new floor in the existing cafe, would cost approximately $70,000.00. Mayberry further argues that the trial court's award is inadequate because the trial court "failed to add the sums necessary for labor and other material costs needed to repair the floor." Appellant's Brief at 19. Additionally, Mayberry argues that its expert's testimony established that the court's solution of repairing concrete in the new addition "would not entirely fix the condition of the floor." *Id.*

The trial court found that the contract between E–R and Mayberry "called for the floor of the new construction to be level with the floor in the existing structure." (Mayberry Finding of Fact # 1; Appellant's App. at 51). The trial court also found that the contract "did not include any provisions for repair or replacement of the floor in the [existing cafe]." (Mayberry Finding of Fact # 3; Appellant's App. at 51). The trial court concluded that "Mayberry's claim that anyone other than Mayberry should be responsible for the replacement of the floor in the [existing cafe] is wholly without merit." (Mayberry Finding of Fact # 4; Appellant's App. at 51).

The trial court further found that the "cost to remove and replace the concrete in the areas necessary to even the new floor with the old floor is $10.00 per square foot" and that the "approximate square footage needing to be replaced is 600."

(Mayberry Findings of Fact ## 6 and 7; Appellant's App. at 51). Thus, the trial court concluded that Mayberry is entitled to an offset of the judgment in favor of E–R in the amount of $6,000.00. (Mayberry Finding of Fact # 10; Appellant's App. at 51).

■ We will affirm a damage award if it is within the scope of the evidence before the trial court. *Dreibelbiss Title Co. v. MorEquity, Inc.,* 861 N.E.2d 1218, 1222 (Ind.Ct.App.2007), *trans. denied.* If the record supports the award of damages, the determination of those damages is within the sound discretion of the trial court. *Id.* The trial court's award of damages will be reversed only if it is not within the scope of the evidence. *Whitaker v. Brunner,* 814 N.E.2d 288, 296 (Ind.Ct.App.2004), *trans. denied.*

Our review of the evidence discloses that Mayberry's expert testified that his $70,000.00 estimate would cover the "worst case scenario," a scenario that was not shown to exist. Our review further discloses that Mayberry's expert's method of evening the floors required the installation of a new floor in the existing café and that Mayberry's expert did not testify that the trial court's solution would fail to fix the problem of evening the floors, but would fail to fix the "wavy, spongy" problems with the floor in the existing café. It is clear from the trial court's findings that it did not buy into Mayberry's plan to have a new, free floor installed in its existing café under the guise of "fixing" the uneven floor installed in the new addition.

Furthermore, our review of the transcript discloses that the trial court's award did include labor costs. The trial court's award was based on the following exchange between the trial court and Mayberry's expert:

THE COURT: [I]s it possible to dig up the concrete, pour the concrete so that it's three inches lower in those places?

ANSWER: It's possible to tear the concrete up, yes. And pour it lower.

THE COURT: Any idea of what the cost of that would be?

ANSWER: [W]hatever the square footage is, I would guess $4.00 a foot to pour new and probably at least that much to tear out, plus the fact that you're talking about working in confined spaces and saw cutting, so I guess about $10.00 a foot.

THE COURT: $10.00 a square foot?

ANSWER: Yes.

Transcript at 469. The trial court's findings are within the scope of the evidence; accordingly, the court's $6,000.00.00 setoff is not clearly erroneous.

## IV. GLENMARK'S ATTORNEY FEE AWARD

■ The trial court awarded Glenmark a judgment of foreclosure on its mechanic's lien against Mayberry in the amount of $37,875.68. Subsequently, Glenmark filed a motion to correct error requesting additional awards for attorney fees and prejudgment interest. The trial court granted Glenmark's motion, awarding Glenmark $31,704.22 in attorney fees. Mayberry contends that the trial court's award of attorney fees is precluded by Indiana's Mechanic's Lien Statute.[4] Interpretation of a statute is a question of law that is reviewed *de novo* on appeal. *See George S. May International Co. v. King,* 629 N.E.2d 257, 260 (Ind.Ct.App.1994), *trans. denied.*

---

4. Resolution of this issue bears on the availability of damages to Haines (see Issue V below).

The Mechanic's Lien Statute, Ind.Code § 32–28–3–1 *et. seq.*, permits the award of attorney fees. However, that award is limited by Ind.Code § 32–28–3–14, which in the version in effect at the time of Glenmark's lawsuit, read as follows:

(a) Except as provided in subsection (b), in an action to enforce a lien under this chapter, a plaintiff or lienholder who recovers a judgment in any sum may recover reasonable attorney's fees as part of the judgment.[5] The court shall enter the attorney's fees as a part of the judgment.

(b) A plaintiff may not recover attorney's fees as part of the judgment against a property owner in an action in which the contract consideration for the labor, material, or machinery has been paid by the property owner or party for whom the improvement has been constructed.

Mayberry emphasizes that the trial court found E–R had received $45,937.00 from Mayberry that was not paid to subcontractors. Mayberry further emphasizes that the trial court also found that Glenmark's claim had priority over all other claimants against Mayberry. Mayberry argues that because Mayberry had paid to E–R more than the balance of the contract consideration for Glenmark's mechanic's lien claim, but E–R failed to pay Glenmark, Mayberry is not required to pay Glenmark's attorney fees pursuant to Ind. Code § 32–8–3–14(b).

Mayberry does not argue that it designated or directed its payment to E–R to be applied to the Glenmark claim; instead, it relies on the trial court's after-the-fact determination of lien priorities. As Glenmark notes in its brief, the "foreclosure judgment setting priorities of lien claim-

ants is no safe harbor." Given the undisputed facts that Mayberry failed to pay the entire fixed contract price to E–R and that many subcontractors were owed a large sum of money, we cannot conclude that Mayberry paid the "contract consideration for the labor, material, or machinery" supplied by Glenmark. Thus, the trial court did not err in awarding attorney fees.

## V. HAINES' RECOVERY UNDER THE PERSONAL LIABILITY NOTICE STATUTE

■ The trial court found that Haines was entitled to recover $14,615.74 from Mayberry and E–R for its work performed on the project. (Finding of Fact # 31, Appellant's App. at 38). The trial court correctly noted that pursuant to Ind.Code § 32–28–3–9, a subcontractor such as Haines may recover the amount of its claim from the property owner (Mayberry) "if after the amount of other claims that have priority are subtracted from the amount due from the property owner [Mayberry] to the general contractor [E–R] sufficient funds remain to pay the amount of Haines' claim." (Finding of Fact # 28; Appellant's App. at 38). Mayberry argues that Haines should recover nothing because the amounts owed to Glenmark, the entity with first priority, exceed the amount due from Mayberry to E–R.

■ Haines acknowledges that the statutory remedy provided by Ind.Code § 32–28–3–9 is against an owner of real estate only to the extent that contract proceeds are still owed by the owner to the general contractor. *See Blade Corp. v. American Drywall, Inc.*, 400 N.E.2d 1183, 1186 (Ind.Ct.App.1980). Haines further

5. P.L. 1–2007, Sec. 211, amended this section to read that a plaintiff or lienholder "is entitled to recover reasonable attorney fees."

acknowledges that the "right created by the personal liability section is strictly a derivative one" and that "what [the owner] did not owe [the general contractor], it did not owe the subcontractors, be they as pure as the driven snow." Haines' Brief at 4 (quoting *Coplay Cement Co. v. Willis & Paul Group,* 983 F.2d 1435, 1437 (7th Cir. 1993)).

The trial court determined that the contract balance owed to E–R by Mayberry is $76,326.99 with a setoff of $6000 to make the floors even. (Trial Court's Judgments ## 3 and 5; Appellant's App. at 52). The trial court further determined that Glenmark was entitled to recover $37,875.68 from Mayberry and E–R. (Trial Court's Judgment # 1; Appellant's App. at 52). After Glenmark filed its motion to correct error, the trial court also determined that Glenmark was owed $31,704.22 for attorney fees and $25,742.99 in prejudgment interest on the mechanic's lien judgment. (Trial Court's June 26, 2006 Order and July 13, 2006 CCS Entry; Appellant's App. at 54–55; 32).

As Mayberry notes in its appeal, the total amount owed to Glenmark, the party with first priority to the remaining contract proceeds, is $95,322.89, an amount that exceeds the contract proceeds owed by Mayberry to E–R by almost $20,000.00.

Glenmark argues, however, that the attorney fees should not be included in the calculation because the fees were not monies

> that [E–R] had sought from Mayberry and were not monies awarded to [E–R] by the court. The attorney fees accrued to Glenmark because for many, many years Mayberry failed to pay money to the general contractor [E–R] that would have allowed [E–R] to pay its subcontractors including Glenmark, and May-

berry continued to resist paying monies that it had agreed to pay to [E–R].

Haines' Brief at 5.

While this argument has equitable appeal, it does not entitle Haines to recovery under the personal liability statute. Ind. Code § 32–28–3–14(a) states that the attorney fees awarded to a subcontractor seeking to foreclose on a mechanic's lien are "part of the judgment." Therefore the first-priority judgment in favor of Glenmark includes the attorney fee award. There do not appear to be any funds left over for recovery under the personal liability statute. On remand, however, the trial court can make the final calculations.

## VI. CURRY'S ALLEGED NEGLIGENCE

Mayberry contends that the trial court erred in determining that Curry was not negligent in the way that it supervised the project. Mayberry argues that the trial court's findings are inconsistent with the court's finding that E–R was liable for not constructing a floor in the addition that was level with the floor in the existing café. Specifically, Mayberry argues that it "necessarily follows that Curry should have been held liable to Mayberry for its failure to supervise E–R's work to ensure it complied with the plans and specifications." Appellant's Brief at 26.

Where, as here, a trial court has entered specific findings of fact and conclusions of law pursuant to a party's request under Ind. Trial Rule 52(A), we will affirm the judgment on any legal theory supported by the findings. *Capehart v. Capehart,* 705 N.E.2d 533, 536 (Ind.Ct.App. 1999). In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous. *Id.* Findings of fact are

clearly erroneous when the record lacks any reasonable inferences from the evidence to support them. *Id.* In determining whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

The responsibility of an architect is similar to that of a lawyer or physician. *Lukowski v. Vecta Educational Corp.,* 401 N.E.2d 781, 786 (Ind.Ct.App. 1980). "When he possesses the requisite skill and knowledge, and in the exercise thereof has used his best judgment, he has done all the law requires." *Id.* Thus, the key question in determining whether an architect has been negligent is not whether error occurred, but whether the architect breached a duty to exercise "the degree of competence ordinarily exercised in like circumstances by reputable members of the profession. . . ." *Walters v. Kellam & Foley,* 172 Ind.App. 207, 360 N.E.2d 199, 206 (1977). Absent a special agreement, an architect does not imply or guarantee a perfect plan. *Lukowski,* 401 N.E.2d at 786. Furthermore, an architect "is not a warrantor of his plans and specifications. The result may show a mistake or defect, although he may have exercised the reasonable skill required." *Id.* (quoting *Bayne v. Everham,* 197 Mich. 181, 163 N.W. 1002 (1917)).

The trial court found that the plans prepared by Curry called for the elevation of the floor in the restaurant's addition to match the elevation of the floor in the existing café, a fact which no party disputes. (Finding of Fact # 80; Appellant's App. at 43). The trial court also found that Curry was not aware of anything that would have prevented ER from being able to match the elevations in the floors, and that as an architect, Curry was not responsible to provide instruction to E–R regard-ing the means, methods, or sequence of its work on the project. · (Finding of Fact ## 81–82; Appellant's App. at 43). The trial court further found that Curry did not assume any duties "in regards to the determination of the proper. elevation of the floor in the new addition so that it would match the elevation of the floor in the existing structure." (Finding of Fact # 82; Appellant's App. at 43).

There was no written contract between Curry and Mayberry. The contract between E–R and Mayberry, however, defined Curry's duties on the project, and it provided that the "[d]uties, responsibilities and limitations of authority of the Architect as set forth in the [contract] shall not be restricted, modified or extended without written consent of [Mayberry, E–R, and Curry]." (Contract Provision 4.1.2; Appellant's App. at 147). The contract provided that Curry would act as Mayberry's representative for certain periods of time; however, Curry's authority to act for Mayberry was limited by other provisions of the contract. (Contract Provision 4.2; Appellant's App. at 147). Curry was required to visit the project site at appropriate intervals (1) to become generally familiar with and to keep Mayberry informed about the progress and quality of the portion of the project completed; (2) to endeavor to guard Mayberry against defects and deficiencies in the work on the project; and (3) "to determine in general if the work is being performed in a manner indicating that the work, when fully completed, will be in accordance with the contract documents." (Contract Provision 4.2.2; Appellant's App. at 147). Curry was not required, however, "to make exhaustive or continuous on-site inspections to check the quality or quantity of the [project]." *Id.* The contract further provided that Curry "will neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or

procedures, or for the safety precautions and programs in connection with the [project], *since these are solely [E–R's] rights and responsibilities under the [contract] . . . .*" *Id.* (emphasis added).

The contract also provides that Curry "will not be responsible for [E–R's] failure to perform the Work in accordance with the requirements of the Contract Documents." (Contract Provision 4.2.3; Appellant's App. at 147). More importantly, the contract provides that Curry "will not have control over or charge of and *will not be responsible for acts or omissions of [E–R], Subcontractors, or their agents or employees, or any other persons or entities performing portions of the [project]."* *Id.* (emphasis added).

The record shows that Curry representatives made the requisite on-site visits in order to become generally familiar with the progress of the project and the quality of E–R's work and to endeavor to guard Mayberry against defects and deficiencies in the work. Curry was not required to, and did not, make exhaustive and continuous on-site inspections that might have revealed E–R's miscalculations in its attempts to level the floors. Under the contract provisions and the facts of this case, the trial court's conclusion that Curry was not negligent is consistent with its finding of E–R's negligence. Curry clearly did not assume a special duty that required it to be an insurer of E–R's work; indeed, Curry's involvement and options were explicitly limited by the contract.

Moreover, Curry's certification of E–R's pay applications does not make Curry liable for E–R's negligence. In certifying the pay applications, Curry stated that "based on *on-site observations* and data comprising this application, [Curry] certifies to [Mayberry] that *to the best of [Curry's] knowledge, information and belief* . . . the quality of the work is in accordance with the Contract Documents and

[E–R] is entitled to payment of the AMOUNT CERTIFIED." (Trial Exhibits 303–306) (emphasis added).

The record indicates that based on the knowledge, information, and belief garnered from its on-site inspections, Curry believed that E–R had complied with the contract documents. Thus, it certified E–R's applications. Given the limitations of its authority as provided by the contract between Mayberry and E–R, Curry was initially unable to discover the disparity in floor elevations. When Curry later learned of the disparity when the bricked-in windows were knocked through, it immediately informed Mayberry of the problem. The evidence is sufficient to support the conclusion that Curry used reasonable care and professional skill in preparing the plans and in attempting to insure that the plans were carried out.

## CONCLUSION

The trial court erred in concluding that the no-lien and indemnity provisions of the contract between Mayberry and E–R were unenforceable. We reverse and remand for further proceedings consistent with this conclusion. On remand, the trial court shall also determine whether, pursuant to this court's discussion of Issue V, there are any monies available to satisfy Haines' judgment under the Personal Liability Notice Statute.

The trial court did not err in determining that a $6,000.00 setoff was appropriate or in awarding attorney fees to Glenmark. Furthermore, the trial court did not err in determining that Curry was not negligent.

Reversed and remanded in part; affirmed in part.

MAY, J., and CRONE, J., concur.