## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 11 2016, 6:23 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEES |
|---|---|
| David W. Westland | Gordon A. Etzler |
| Westland & Bennett, P.C. | Gordon A. Etzler & Associates, LLP |
| Schererville, Indiana | Valparaiso, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| First Midwest Bank, as successor in interest to Bank Calumet, N.A., | March 11, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 64A05-1504-PL-152 |
| v. | Appeal from the Porter Superior Court. |
| Dean Vander Woude and Timothy Koster, | The Honorable Roger V. Bradford, Judge. |
| *Appellees-Plaintiffs.* | Cause No. 64D01-0605-PL-3878 |

**Shepard, Senior Judge**

[1] The trial court entered judgment against First Midwest Bank on Dean Vander Woude and Timothy Koster's claim of slander of title. First Midwest appeals, claiming that the evidence is insufficient to support the judgment. We affirm.

# Facts and Procedural History

[2] This case is almost a decade old, and this is the third appeal. Michael and Kim Angelini executed a note and mortgage with First Midwest's predecessor in interest, Bank Calumet, N.A. The mortgage applied to property at 601 Franklin Street in Valparaiso, Porter County. Bank Calumet erroneously filed the mortgage in Lake County rather than in Porter County.

[3] The Angelinis also executed a note and mortgage with Bank One, predecessor to JP Morgan Chase Bank, using the Franklin Street property as security. JP Morgan's mortgage was recorded in Porter County.

[4] The Angelinis experienced financial difficulties and defaulted on both of their notes. In 2004, JP Morgan filed a foreclosure action. First Midwest was not named as a defendant. JP Morgan obtained a judgment of foreclosure. On March 9, 2005, the Franklin Street property was sold at a sheriff's sale to Dean Vander Woude and Timothy Koster. They rehabilitated the home and negotiated a sale to Tom Krueger and his family.

[5] First Midwest, through its counsel David Westland, also filed a foreclosure action in Porter County in 2004. At that time, First Midwest possessed a "Memo of Title" from South Shore Title, LLC. Appellees' App. p. 59. The Memo indicated that First Midwest's mortgage had been improperly recorded in Lake County and needed to be recorded in Porter County. In its complaint for foreclosure, First Midwest noted that the mortgage had been filed in Lake

County. A copy of the mortgage was attached to the complaint; it had been stamped by the Lake County Recorder.

[6] On March 31, 2005, First Midwest obtained a default judgment against the Angelinis. It filed a praecipe for a sheriff's sale with the Porter County Clerk, and the sheriff scheduled the sale for June 9, 2005. Vander Woude discovered the sale while reading sheriff's notices in a newspaper. He was "very nervous" about the news because he had not known of the other mortgage and was negotiating the sale of the house to the Kruegers. Tr. p. 169.

[7] Vander Woude called First Midwest's attorney, Westland, to inform Westland that he had already purchased the property. Westland refused to cancel the sale. He told Vander Woude that his "responsibility was collecting for the bank, and that's what he cared about and he was going to collect, one way or another, that money." *Id.* at 177. Later, after speaking with Vander Woude's attorney, Westland canceled the sale by notifying the sheriff in writing.

[8] On June 15, 2005, Westland filed with the Porter County Clerk a second praecipe to schedule a sale. The sheriff scheduled a sale for August 24, 2005. Vander Woude learned of the August 24 sale date when Tom Krueger called him in a "frantic" state of mind. *Id.* at 186. Vander Woude and his attorney again contacted Westland to reassert Vander Woude and Koster's claim to the property. On August 10, 2005, First Midwest, through Westland, sent a letter to the Porter County Sheriff asking to cancel the August 24 sale. Westland said

in the letter that the Angelinis had filed for bankruptcy again but did not mention the prior sheriff's sale of the property.

[9] Meanwhile the Kruegers' lender would not let the new purchase go forward unless First Midwest's foreclosure action was addressed. Vander Woude and Timothy Koster resolved the matter by escrowing $96,600 with the title company, and the transaction was completed.

[10] Vander Woude and Koster sued First Midwest in 2006, alleging intentional interference with a contract, conversion, and slander of title. On cross-motions for summary judgment, the trial court entered judgment in favor of First Midwest as to intentional interference and conversion, and in favor of Vander Woude and Koster as to slander of title. At a jury trial on damages, the jury awarded Vander Woude and Koster $99,900.

[11] On appeal, a panel of this Court determined that Vander Woude and Koster were not entitled to summary judgment for slander of title and remanded for further proceedings. *First Midwest Bank v. Vander Woude*, No. 64A04-1103-PL-120 (Ind. Ct. App. Jan. 5, 2012).

[12] On remand, the court held a bench trial and determined that First Midwest had committed slander of title and awarded Vander Woude and Koster damages and attorney's fees. This appeal followed.[1]

## Discussion and Decision

[13] As the trial court issued findings of fact and conclusions, our review examines whether the evidence supports the findings and whether the findings support the judgment. *Mayberry Café, Inc. v. Glenmark Constr. Co.*, 879 N.E.2d 1162 (Ind. Ct. App. 2008), *trans. denied*. "On appeal of claims tried by the court without a jury . . . the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). Findings of fact are clearly erroneous when the record lacks reasonable inferences from the evidence to support them. *Mayberry Café*, 879 N.E.2d 1162. We consider only the evidence favorable to the judgment and all reasonable inferences, and we will not reweigh the evidence or assess witness credibility. *Id.*

[14] To prevail on a slander of title claim, a plaintiff must prove that the defendant made false, malicious statements regarding the plaintiff's ownership and that those statements proximately caused the plaintiff pecuniary loss. *Walsh & Kelly,*

---

[1] In a separate appeal, Vander Woude and Koster challenged the amount of the attorney's fees and the trial court's denial of their request for prejudgment interest. *Vander Woude v. First Midwest Bank*, ___ N.E.3d ___, No. 64A04-1504-PL-160 (Ind. Ct. App. Nov. 6, 2015). The Court affirmed the denial of prejudgment interest but reversed and remanded for recalculation of attorney's fees. *Id.*

*Inc. v. Int'l Contractors, Inc.*, 943 N.E.2d 394 (Ind. Ct. App. 2011), *trans. denied*. Malicious statements are those made knowingly or with reckless disregard for their falsity. *Id.* The trier of fact may infer malice from the evidence. *Id.*

[15] First Midwest claims the trial court erred in citing certain evidence – "the recording of [First Midwest's] mortgage, the filing of a mortgage foreclosure action, and the obtaining of a default judgment" – as proof of slander of title. Appellant's Br. p. 6. First Midwest reasons that the statements in its court pleadings were privileged and cannot support a claim of slander of title.

[16] If a statement is made under circumstances where it is absolutely privileged, no right of action for slander accrues even though the statement may have been actionable in other circumstances. *Trotter v. Ind. Waste Sys., Inc.*, 632 N.E.2d 1159 (Ind. Ct. App. 1994). Statements contained in pleadings are absolutely privileged if they are relevant to the litigation. *Id.* By contrast, litigating a case *is* an action, not a statement in a court document, and may support a claim of slander of title. *See Country Contractors, Inc. v. A Westside Storage of Indianapolis, Inc.*, 4 N.E.3d 677 (Ind. Ct. App. 2014) (filing of invalid lien claim was sufficient evidence to support slander of title claim). The evidence First Midwest claims to be privileged involves acts rather than statements in court documents, and its claim of privilege must fail.

[17] Next, First Midwest says the trial court failed to find that it acted maliciously. In its findings and conclusions, the court stated that it intended to decide whether First Midwest acted "with malice" in scheduling the sheriff's sales.

Appellant's App. p. 37. The court then determined that First Midwest initiated the sales by filing praecipes and that First Midwest "placed a cloud upon the title" to the Franklin Street property by recording in the wrong county, pursuing a foreclosure, and obtaining a default against the Angelinis. One may reasonably infer from these statements that the trial court concluded as a matter of law that First Midwest acted with malice.

[18] First Midwest further claims that there is insufficient evidence to support a conclusion that it acted with malice. As noted above, malice may be inferred from the evidence. The Angelinis defaulted on a note and mortgage which First Midwest had recorded in the wrong county. Westland conceded, "A mortgage that is recorded in the wrong county is not secured. It is an unsecured debt." Appellees' App. p. 34. Thus, due to the recording error, JP Morgan's mortgage held first priority.

[19] First Midwest filed a foreclosure even though it had received a report from a title insurance company noting the recording error. In its complaint, First Midwest stated that the mortgage had been recorded in Lake County and attached a copy of the mortgage bearing a Lake County recording stamp. Thus, the invalidity of the foreclosure action was or should have been known to First Midwest from the very outset.

[20] First Midwest obtained a default against the Angelinis and, after the court issued its order, initiated a sheriff's sale. Vander Woude and his lawyer both notified attorney Westland that Vander Woude and Koster had purchased the

property at a sheriff's sale. First Midwest initially declined to cancel the sale, stating that it intended to recover its money "one way or another." Tr. p. 177.

[21] First Midwest eventually directed that the sale be canceled but did not research ownership of the property or the validity of its claim. Instead, its lawyer filed a second praecipe for a sheriff's sale, further hindering Vander Woude and Koster's attempts to sell the property. This is ample evidence to support the trial court's determination that First Midwest maliciously made false statements regarding Vander Woude and Koster's ownership. *See Lee & Mayfield, Inc. v. Lykowski House Moving Eng'rs, Inc.*, 489 N.E.2d 603 (Ind. Ct. App. 1986) (wrongful filing of baseless action to foreclose upon mechanic's lien was sufficient proof of malice), *trans. denied*.

[22] Finally, First Midwest argues there is insufficient evidence that it proximately caused Vander Woude and Koster's damages. A proximate cause is "'that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred.'" *Peters v. Forster*, 804 N.E.2d 736, 743 (Ind. 2004) (quoting *Orville Milk Co. v. Beller*, 486 N.E.2d 555, 559 (Ind. Ct. App. 1985)).

[23] Vander Woude and Koster negotiated to sell the property to the Krueger family and executed a contract in May 2005, but First Midwest's repeated attempts to obtain a sheriff's sale interfered with negotiations and delayed the sale. Tom Krueger notified Vander Woude of the second scheduled sheriff's sale. First

Midwest's erroneously recorded mortgage and its default judgment against the Angelinis caused the title company to require Vander Woude and Koster to escrow an additional $96,600 to address the cloud on the title. As a result, Vander Woude and Koster exhausted their line of credit and had to pass up several business opportunities because they could not use the escrowed funds. This is ample evidence to support a conclusion that First Midwest's tortious behavior proximately caused their damages.

# Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

May, J., and Crone, J., concur.